UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM MITCHELL BOWMAN,<br><br>Defendant. | Case No.:  19-MJ-05089-JLB-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR RELEASE ON BAIL PENDING EXTRADITION PROCEEDINGS**<br><br>**[ECF No. 15]** |

Before the Court is Defendant William Bowman's Motion for Release on Bail.  (ECF No. 15.)  Defendant is currently in the United States awaiting an extradition hearing.  The United States opposes Defendant's motion.  (ECF No. 16.)  After review of the parties' arguments, the Court **GRANTS** Defendant's Motion for Release on Bail.

## I.     <u>BACKGROUND</u>

### A.     Factual Background

Defendant is a seventy-year-old man who faces charges of rape and of lewd, indecent, and libidinous behavior.  (ECF Nos. 7 at 1; 15 at 2.)  These acts were alleged to have taken place between 1963 and 1973 when Defendant was between the ages of sixteen and eighteen.  (ECF Nos. 7 at 1–2; 16 at 1–2.)  Victim E. K. confronted Defendant in 2009 and reported the alleged crimes to the Police Service of Scotland in 2010.  (ECF No. 7 at 2–3.)

A statement was taken from E. K. by Universal City, Texas police officers at the request of Scottish officials on June 17, 2010.  (ECF No. 1 at 16.)  Per a proffer by the United States, on December 2, 2013, Scottish officials made an official MLAT request to United States authorities to obtain full statements from five witnesses.[1]  These statements were taken by police officers in the United States in September and October of 2014 and sent to Scottish prosecutors.  (*Id.*)  The charges in this matter were issued on April 16, 2015.  (*Id.* at 32–36.)  On April 16, 2015, the petition for an arrest warrant was submitted to the official responsible for granting arrest warrants.  (*Id.* at 18.)

A request for extradition was prepared, dated December 4, 2018.  (*Id.* at 10–26.)  Thereafter, a request for extradition was communicated to the Department of State on December 4, 2018.  (*Id.* at 18.)  A certification of authentication was signed by the Right Honourable James Wolffe on December 10, 2018, and the certification of Wolffe's signature was signed on December 28, 2018.  (*Id.* at 7–9.)  Additional information related to the extradition request was sealed and certified and provided to the Office of International Affairs on June 12, 2019.  (*Id.* at 37–40.)

Mr. Bowman was then taken into custody by the U.S. Marshals Service.  (*Id.* at 3.)

**B.  Procedural Background**

On December 2, 2019, the United States filed a Memorandum of Law as to Detention Pending Extradition.  (ECF No. 7.)  On December 26, 2019, Defendant filed a Motion for Release on Bail.  (ECF No. 15.)  On January 1, 2020, the United States filed a Response to Petitioner's Motion for Release on Bail.  (ECF No. 16.)  On January 7, 2020, Defendant filed a Reply to Government's Response in Opposition.  (ECF No. 17.)  On January 8, 2020, Defendant filed a supplemental exhibit, the declaration of Scottish solicitor Ryan Sloan.  (ECF No. 18.)

///

---

[1]  Although invited to do so by the Court, the United States was unable to provide any information about the timing of communications that preceded the formal MLAT request.

On January 9, 2020, the Court held a hearing and took the matter under submission. (ECF No. 19.) On February 6, 2020, the Court held an additional hearing. (ECF No. 23.) On February 7, 2020, Defendant supplemented his proffer regarding a proposed bond. Defendant proposed as sureties the half-brother of Defendant's stepdaughter and the half-brother's wife. They own a home with approximately $75,000 in equity. On February 11, 2020, the United States supplemented its proffer re the date of the MLAT from Scotland.

## II. **DISCUSSION**

Unlike traditional defendants for whom there is a presumption in favor of bail under the Bail Reform Act, Defendant here is in extradition proceedings. "There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) (citing *Wright v. Henkel*, 190 U.S. 40, 63 (1903)). Thus, "[a]lthough it is 'unusual and extraordinary' for bail to be granted, it is not impossible to obtain bail in an international extradition treaty case." *In re Extradition of Nacif–Borge*, 829 F. Supp. 1210, 1213 (D. Nev. 1993) (quoting *United States* ex rel. *McNamara v. Henkel*, 46 F.2d 84, 84 (S.D.N.Y. 1912)).

Although bail may be granted under "special circumstances," the term has not been precisely defined. "Examples of such circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process. *See Aronson v. May*, 85 S. Ct. 3, 5 (1964); *Salerno*, 878 at 317; *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979); *Galante v. Warden*, 573 F.2d 707, 708 (2d Cir. 1977).

In addition to showing special circumstances, the party seeking bail must, as a threshold requirement, "demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community." *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035–36 (C.D. Cal. 2006); *see also* 9B Federal Procedure (L. ed. 2019) § 22:2404 ("That the detainee is not a flight risk is not a special circumstance warranting release. Rather, the absence of a defendant's risk of flight is more in the nature of a condition precedent to going forward with any determination of the existence of

'special circumstances' that could overcome the presumption against bail." (footnotes omitted)). In other words, not being a flight risk "is not the criteria for release in an extradition case." *Salerno*, 878 F.2d at 318 (citing *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984)).

## A. Risk of Flight

As Defendant acknowledges, "[i]n order to obtain bail, the defendant must first show that he is neither a flight risk nor a danger to the community." (ECF No. 15 at 3.) Defendant argues that he is not a flight risk or a danger because he is seventy years old, has been a legal permanent resident for over 50 years, has been a resident of southern California for all that time, and has been a resident of San Diego County for almost thirty years. (*Id.*) His Scottish passport is expired, and he has not left the country for "several years." (*Id.* at 3–4.) His life—family, job, home, doctors—is here. (*Id.* at 4.) He has extended family—wife, adult children, grandchildren, great-grandchildren—with whom he has strong relationships. (*Id.*) He has no criminal record. (*Id.*) He has no history of drug or alcohol abuse. (*Id.*) He has no mental health issues. (*Id.*) He is a cancer survivor who currently suffers from emphysema and chronic obstruct pulmonary disorder ("COPD"), for which he is on medication. (*Id.* at 4–5.) Defendant argues that if he fled he would "forfeit his medical care and thus be sentencing himself to an early death." (*Id.* at 5.)

The United States responds that Defendant is both a flight risk and a danger to the community. The United States notes that the crimes with which Defendant is charged involve repeated acts of sexual assault upon minors close to him over the course of multiple years. (ECF No. 16 at 1.) The abuse allegedly only stopped after Defendant was forced out of the home he lived in with the minors. (*Id.* at 2.) Defendant has been identified by the victims, and Defendant later admitted the crimes to two different people—one of the victims and the victims' father. (*Id.*) The United States argues that because of Defendant's age and health issues, combined with the risk of a lengthy sentence, he has a strong incentive to flee rather than risk dying in prison. (*Id.*)

///

Defendant clearly has strong ties to the community and an established history of stability. However, he has mobility and is no stranger to international travel. Also, based upon the seriousness of the charges, he could face substantial time in custody if convicted. Due to his age and health issues, he has an incentive to flee to avoid the risk of dying in custody. Moreover, the offenses charged are stigmatizing, and the claims are made by family members (albeit through adoption). This could provide Defendant with an additional incentive to flee rather than face the charges. The Court does not credit the claim that if Defendant flees he would "forfeit his medical care and thus be sentencing himself to an early death." There is no reason for the Court to conclude that if Defendant fled he would be unable to receive medical care in his new location.

Nonetheless, Defendant proposes a substantial real property bond. Specifically, a family member (through marriage) of Defendant's is prepared to serve as surety and put up his primary residence that has substantial equity. The Court therefore finds that Defendant has met his burden to show that he is not such a risk of flight or danger that the Court could not set conditions of release, if Defendant were also able to show that special circumstances exist.

**B.   Special Circumstances**

Defendant urges the Court to find "special circumstances" on the following bases, separately or in combination: (1) Scotland's delay in requesting extradition; (2) eligibility for bail in Scotland; (3) age and medical conditions; (4) character and lack of criminal history; (5) no risk of flight; and (6) meritorious defenses to extradition. The United States opposes.

1.   <u>Age and Medical Conditions</u>

Serious medical issues that cannot be addressed in custody can constitute "special circumstances." That is not the case here. Defendant has a history of cancer and serious health issues (emphysema and COPD), for which he is taking medication. The medication has side effects. However, there is no evidence before the Court that Defendant is not receiving appropriate medication while in custody or that his health problems have been

exacerbated.  Defendant represents that he has lost a substantial amount of weight while in custody but does not proffer why he has lost weight or whether the weight loss poses a threat to him.  His age and health issues do not evidence a "serious deterioration of health" that would constitute a "special circumstance."  *See Nacif–Borge*, 829 F. Supp. at 1217 (finding that having one kidney and needing a special diet and daily exercise to avoid serous medical problems did not constitute a "special circumstance").

### 2.   Character and Lack of Criminal History

Defendant, at seventy, has no criminal history and represents that he has led a stable, productive life since the years during which these charges arise.  This is commendable but would not seem to so set him apart from others facing extradition such that it should constitute a "special circumstance."

### 3.   No Risk of Flight

To be eligible for bail, a defendant must always demonstrate that he is not a risk of flight before the court reaches the question of whether there are special circumstances that warrant the setting of bail.  Not being a risk of flight should not be sufficient, standing alone, to constitute a "special circumstance."[2]  Furthermore, the Court is not persuaded that Defendant presents no risk of flight, only that there are conditions the Court could set that would reasonably assure his appearance at future court dates.  The United States has made a convincing case that the seriousness and nature of the charges, especially in light of Defendant's advanced age and health issue, create a substantial incentive for Defendant to flee.  The Court does not consider the lack of risk of flight to be a "special circumstance" in this case.

///

---

[2]    The Court acknowledges that Defendant clarified in his Reply that he is not putting forth lack of risk of flight as an independent "special circumstance" but rather as a factor adding to the totality of the circumstances warranting the setting of bail in this case.  (ECF No. 17 at 9.)

### 4. Meritorious Defenses to Extradition

Defendant argues that he "will raise substantial claims going to the merits of the extradition request, which have a high likelihood of resulting in a denial of a warrant for his extradition." (ECF No. 15 at 11.) Specifically, Defendant will challenge the probable cause to extradite him on two bases. (*Id.*) The first is that the delay in reporting and investigation "indicates the weakness of the prosecution's case against him." (*Id.*) The second is Defendant's intent to challenge "whether this is an extraditable [offense] due to his juvenile status." (*Id.* at 11–12.)

The Court in deciding this motion does not prejudge the ultimate issue of the extradition hearing, which is probable cause. However, as to the first issue identified by Defendant, he points only to the delay in the reporting of the offense and the delay in extradition as suggestive of a weakness in the evidence but does not set forth his actual challenge to the sufficiency and reliability of the evidence against him. As to the second, Defendant sets forth the legal basis for his argument that the acts he is alleged to have committed while a juvenile may not support extradition, but he does not address in any way the acts that were allegedly committed while Defendant was an adult. The Court does not find this to constitute a "special circumstance" in this matter.

Nor is the Court persuaded that the amount of time that it will take to resolve these issues at an extradition hearing will be unusually long such that the Court should find a "special circumstance" based upon an "unusual delay" in obtaining a decision on the merits. *See United States v. Kollmar*, No. 19-MJ-70677-MAG-1 (KAW), 2019 WL 2163005, at *2–3 (N.D. Cal. May 17, 2019).

### 5. Availability of Bail in the Country Seeking Extradition

Defendant points out that some courts have recognized the availability of bail in the country seeking extradition as a "special circumstance." The argument is that there is no "diplomatic necessity" for denying bail if the country seeking extradition of a defendant would grant bail to defendants facing extradition to the United States for similar offenses under similar circumstances. The United States acknowledges the fact that both the United

Kingdom and the United States share similar policies. However, the United States argues that this Court "should not speculate whether a magistrate in a foreign country considering an extradition request would grant bail or remand [a defendant] to custody." (ECF No. 16 at 5).[3]

The Court recognizes that some courts have considered the bail position of the extraditing country as a basis for setting bail while others have not. *Compare Nacif–Borge*, 829 F. Supp. at 1220–21, *and Taitz*, 130 F.R.D. at 446–47, *with In re Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1070 (C.D. Cal. 2017), *and In re Extradition of Drumm*, 150 F. Supp. 3d 92 (D. Mass. 2015); *and In re Extradition of Kyung Joon Kim*, No. CV 04–3886–ABC (PLA), 2004 WL 5782517 (C.D. Cal. July 1, 2004); *and In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386–87 (D. Nev. 1995), *and In re Extradition of Rouvier*, 839 F. Supp. 537, 540–41 (N.D. Ill. 1993).

The Court concludes that the better reasoned cases are those that rejected the availability of bail as a "special circumstance," either on the basis that a similarly situated defendant would be granted bail in the charging country or on the basis that a similarly situated defendant facing extradition out of the charging country would be granted bail. First, the consideration of bail for any defendant in any country (except where bail is legally barred) is very fact-specific, and any effort to predict whether an individual would be granted bail based upon whether others charged with similar offences (facing extradition or otherwise) have been granted bail by that country in the past strikes this Court as highly speculative. Also, there is a presumption against bail, and bail is only to be considered in

---

[3] There are actually two separate bases that courts have considered with respect to the bail position of the extraditing country. One is whether the defendant would likely be granted bail in the charging country. *See Nacif–Borge*, 829 F. Supp. at 1220–21. The other is whether bail would be granted in a comparable extradition case, dealing with an equivalent charge, in the requesting country. *See United States v. Taitz*, 130 F.R.D. 442, 446–47 (S.D. Cal. 1990). Defendant makes it clear that he is relying on the latter, rather than the former. (ECF No. 17 at 6–7.)

the unusual case of special circumstances. *Wright*, 190 U.S. at 63 ("We are unwilling to hold that the circuit courts possess *no* power in respect of admitting to bail . . . or that, *while bail should not ordinarily be granted* in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief." (emphasis added)). Allowing for bail whenever bail would not be precluded in the country seeking extradition would likely result in the exception swallowing the rule. As set forth in *Siegmund*:

> adoption of what it termed the "*Gannon* rule," under which an extraditee can be admitted to bail in the United States if the underlying offense is bailable in the requesting country, would "force courts to make searching reviews of foreign laws to determine whether bail is appropriate for a given defendant in a given country for a given offense." That would be an undesirable practice: it might well be unworkable, and, if applied widely, it could eviscerate, at least with respect to requesting countries whose domestic practice, like our own, strongly favors bail, the doctrine set out by the Supreme Court that bail is the exception, not the rule, in international extradition cases.

887 F. Supp. at 1386–87 (citations omitted) (quoting *Rouvier*, 839 F. Supp. at 541). This Court is persuaded that similar reasoning applies with respect to an analysis of whether the charging country would admit bail to a similarly situated defendant facing extradition to another nation.

6.  Atypical Delay in Defendant's Extradition

Defendant argues that delay in requesting extradition constitutes a special circumstance favoring bail. (ECF No. 15 at 5.) Defendant argues that the delay in this case was extraordinary because the charged offenses occurred more than fifty years ago; after the claims were made by the victims in 2010, the Scottish government did not investigate the claims until four years later; and the Scottish government did not pursue extradition until three and a half years after obtaining an arrest warrant. (*Id.* at 6.)

The United States argues that delay should not be considered as a special circumstance for setting bail and instead should be considered only in the context of the Secretary of State's analysis of whether the extradition request should be honored. (ECF No. 16 at 3.) The United States does not respond substantively to the allegation that the

amount of delay in this case was excessive, except to point out that the witnesses are still available. (*Id.*)

Contrary to the United States' assertion, a number of courts have considered delay as a special circumstance, if it is extraordinary. *See, e.g.*, *United States v. Castaneda–Castillo*, 739 F. Supp. 2d 49, 54 (D. Mass. 2010); *In re Extradition of Chapman*, 459 F. Supp. 2d 1024 (D. Haw. 2006); *In re Extradition of Kapoor*, No. 11-M-456 RML, 2011 WL 2296535 (E.D.N.Y. June 7, 2011). The delay, however, should reflect that the requesting nation has not made the prosecution a priority. *See Drumm*, 150 F. Supp. 3d at 98 ("But, not all delays in prosecution show a lack of diplomatic necessity.") Here, the fact that the alleged abuse occurred fifty years ago does not itself suggest that Scotland did not make prosecution a priority; the first victim did not go to the Scottish authorities until 2010. (ECF Nos. 1 at 16; 15 at 6.) The Court instead focuses upon the timeline after the offense was first brought to the attention of Scottish authorities.

Defendant points out that there was more than four years of delay between E. K.'s complaint to Scottish authorities and the completion of witness interviews by police in the United States. The United States was able to provide clarification that the MLAT request for the interviews of additional witnesses was dated December 2, 2013, approximately three-and-a-half years after the interview of the first victim was completed. As mentioned above, the United States could provide no information about communications between the two governments that preceded the official MLAT request. Thereafter, as pointed out by Defendant, there was a three-and-a-half-year delay between the filing of charges and the request for extradition.

In arguing that this delay constitutes "special circumstances" supporting the setting of bail, Defendant relies on two cases. First, Defendant relies on *In re Extradition of Chapman*, 459 F. Supp. 2d 1024 (D. Haw. 2006). In that case, Mexico waited three years before bringing extradition proceedings against the defendants. Next, Defendant contends that *In re Extradition of Kapoor* is similar to the current case in that there was a delay of approximately four years between the arrest warrant and the defendant's request for

extradition. 2011 WL 2296535 (E.D.N.Y. June 7, 2011). Defendant argues that similarly, he waited three and a half years between the administering of an arrest warrant and extradition request.

In general, the extradition process is lengthy. Investigating crimes, particularly crimes that occurred decades earlier, can take years. That time period can further be lengthened when witnesses reside outside of the charging country and investigating authorities are relying on MLAT requests to obtain necessary evidence. The resulting delays do not necessarily mean that the charging country did not make the prosecution a priority. However, in this case, there was a three-and-a-half-year delay between the interview of the first victim–witness and the formal request for interviews of the remaining witnesses, with no explanation offered for the gap in time. Furthermore, there was another three-and-a-half-year delay between the conclusion of those interviews and the request for extradition. Again, the United States has not explained that delay.

Therefore, the Court finds that Defendant has established that the delay in prosecution in this case was atypical and that is reflects that Scotland did not make the prosecution of this offense a priority. The Court finds that Defendant has established a "special circumstance" which overcomes the presumption against detention.

7. <u>Combination of Factors</u>

Even though the Court has determined that delay in prosecution alone stands as a "special circumstance" in this case sufficient to justify setting bail, the Court notes that if delay were not enough standing alone, the Court would find that it is sufficient when considered in combination with other factors. *See In re Extradition of Morales*, 906 F. Supp. 1368, 1373 (S.D. Cal. 1995) ("[T]he cumulation of several factors can constitute special circumstances that justify bail in extradition proceedings." (citing *Nacif–Borge*, 829 F. Supp. at 1216)).

Taking into consideration the delay in seeking extradition after these offenses were brought to the attention of Scottish authorities, Defendant's stability and ties to the community, and his age and health issues, the Court finds that through a combination of

circumstances, Defendant has met his burden to establish a "special circumstance" warranting the setting of bail in this case.

### III.  <u>CONCLUSION</u>

The Court finds that Defendant has established that "special circumstances" exist warranting the setting of bail in this case.  The Court sets conditions of release as set forth in the attached Pretrial Release Order.  The Order is without prejudice and the Court will give the United States an opportunity to be heard on any additional conditions the Court should consider imposing.  The Court orders an examination of sureties before any bond is approved.

**IT IS SO ORDERED.**

Dated:  February 20, 2020

*Jill Burkhardt*

Hon. Jill L. Burkhardt
United States Magistrate Judge