UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EXTRADITION OF WILLIAM MITCHELL BOWMAN | Case No.:  19mj5089-JLB<br><br>**FINDINGS OF FACT, CERTIFICATION OF EXTRADITABILITY, AND ORDER OF COMMITMENT** |

Pursuant to 18 U.S.C. § 3184, the United Kingdom (Scotland), through the United States Government, seeks the extradition of William Mitchell Bowman ("Bowman") from the United States to Scotland.  The extradition request was made under the provisions of the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, and related exchanges of letters,[1] (the "Treaty") for crimes he is alleged to have committed in Scotland. The matter proceeded to an extradition hearing on September 11, 2020.  (ECF No. 46.)

---

[1]  U.K.-U.S., Mar. 31, 2003, S. Treaty Doc. No. 108-23 (2004), *amended by* the Instrument as contemplated by art. 3, ¶ 2 of the Agreement on Extradition between the United States of America and the European Union, E.U.-U.S., June 25, 2003, S. Treaty Doc. 109-14 (2006).

The Court, for the reasons explained below, finds Bowman extraditable.

## I.    PROCEDURAL HISTORY

On April 16, 2015, the Scottish Procurator Fiscal of the Court for the Public Interest filed the charges at issue against Bowman.  (ECF No. 1 at 32–36.)  On December 4, 2018, a Request for Extradition was submitted to the United States by the Right Honorable James Wolffe, Queen's Counsel, Her Majesty's Advocate.  (*Id.* at 10–31.)  A certification of authentication was signed by the Right Honourable James Wolffe on December 10, 2018, and the certification of Wolffe's signature was signed on December 28, 2018.  (*Id.* at 7–9.) Additional information related to the extradition request was sealed and certified and provided to the Office of International Affairs on June 12, 2019.  (*Id.* at 37–40.)

On November 14, 2019, the United States filed a Complaint pursuant to 18 U.S.C. § 3184.  (ECF No. 1.)  Attached as an exhibit to the Complaint is an extradition packet consisting of:

- a certificate of the authentication of the signature of The Right Honourable James Wolffe, Queens Counsel, by Julian Gibbs of the Extradition Section Home Office (*id.* at 7);

- a Certificate of Authentication by The Right Honourable James Wolffe, Queen's Counsel Lord Advocate (*id.* at 8–9);

- the Request for Extradition signed by Helen H. Knipe, Senior Procurator Fiscal Depute (Prosecutor) with Attachments A (Photograph of the Accused), B (Statement of DC Paul Richardson), and C (Certified Copy of the Petition Arrest Warrant) (*id.* at 10–36);

- a supplemental letter from Thomas Crosbie, Procurator Fiscal Depute at the Crown Office and Procurator Fiscal Service and an accompanying certification authenticating the document (*id.* at 37–40);

- a Declaration of Tom Heinemann, Assistant Legal Adviser in the Office of the Legal Adviser for the U.S. Department of State, certified by Secretary of State Michael

Pompeo, and including as attachments the Embassy Note requesting extradition of Bowman from the United States of America to Scotland and the Instrument and Annex constituting the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland (*id.* at 41–62).[2]

Bowman was arrested on November 27, 2019, and appeared in this Court on November 29, 2019.  (ECF No. 6.)  The United States requested detention, and Bowman moved for bond.  The Court ordered briefing and held bail hearings on January 9, 2020, and February 6, 2020.  (ECF Nos. 19; 23.)  On February 20, 2020, the Court granted Bowman's motion for release on bail.  (ECF No. 24.)  On March 12, 2020, Bowman posted bail and was released from custody.  (ECF Nos. 29; 30.)

The Court held an extradition hearing on September 11, 2020.  (ECF No. 46.) Supplemental briefing was submitted on September 18, 2020.  (ECF Nos. 47; 48.)

## II.    LEGAL STANDARD

"Extradition from the United States is a diplomatic process that is initiated when a foreign nation requests extradition of an individual from the State Department."  *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008) (quoting *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005)); *see also* 18 U.S.C. § 3184.  The State Department evaluates the request and, if it determines that "the request is within the scope of a treaty between the requesting nation and the United States, a United States Attorney 'files a complaint in federal district court seeking an arrest warrant' for the individual sought for extradition." *Manta*, 518 F.3d at 1140 (quoting *Prasoprat*, 421 F.3d at 1012).

A magistrate judge must then conduct a hearing to determine extraditability. *Prasoprat*, 421 F.3d at 1012.  The authority of a magistrate judge serving as an extradition

---

[2]    The United States presented the original extradition packet to the Court and defense counsel for their review at the extradition hearing on September 11, 2020.

judicial officer is limited to determining an individual's eligibility to be extradited, that is, whether the crime is an extraditable offense under the subject treaty and probable cause exists to sustain the charge. *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006). "Extradition treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their alleged offenses." *In re Extradition of Santos*, 795 F. Supp. 2d 966, 970 (C.D. Cal. 2011) (quoting *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936)). If the judge finds that both elements are satisfied, the judge "*must* certify the individual as extraditable to the Secretary of State." *Prasoprat*, 421 F.3d at 1014. "The magistrate judge 'has no discretionary decision to make.'" *Id.* (quoting *Lopez–Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997)).

The Secretary of State then exercises his discretion as to whether the individual will be extradited to the requesting nation. 18 U.S.C. § 3186; *Prasoprat*, 421 F.3d at 1012. The Secretary of State makes the ultimate decision on whether to surrender the individual to the requesting country. *Prasoprat*, 421 F.3d at 1012 (citing *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003)).

### III.   DISCUSSION

Bowman advances four arguments in opposition to the request for extradition: (1) the request does not satisfy the applicable treaty requirements in that it does not provide the text of the law; (2) the request fails to set forth sufficient and competent evidence to support probable cause; (3) the offenses charged do not satisfy the requirement of dual criminality; and (4) his Fifth and Sixth Amendment rights have been violated. (ECF No. 37.)

Before addressing the specific challenges raised by Bowman, the Court addresses the matters of the validity of the extradition treaty and the identity of the extraditee.

Bowman does not challenge the validity of the extradition treaty. Scotland seeks extradition of Bowman under the terms of the Treaty, defined more fully above, between the United Kingdom and the United States. (ECF No. 1 at 1, 41, 47–62.) This is a valid treaty currently in force between the United Kingdom and the United States.

Bowman does not dispute that he is the individual sought to be extradited. The documentary evidence accompanying the request for extradition includes persuasive evidence that Bowman is the individual sought by Scotland. All of the victims know Bowman personally, as he is the adopted brother of victims Elizabeth Kato, Kathleen Hyland, and Richard Bowman Junior and the adopted son of victims Catherine Bowman and Richard Bowman Senior. (*Id.* at 12, 22; ECF No. 37 at 1–2.) Elizabeth Kato and Kathleen Hyland have maintained some contact with Bowman since the time of the offenses. (ECF No. 1 at 14.) Scottish police officers obtained a photo of Bowman from the California Department of Motor Vehicles (included as Annex A to the Request for Extradition), which was shown to one of the victims, Kathleen Hyland, who positively identified Bowman as the perpetrator. (*Id.* at 10, 27.) Bowman was also identified by his British passport numbers and social security number. (*Id.* at 25.) Therefore, the Court finds the individual appearing in this matter is the William Mitchell Bowman whose extradition is sought by Scotland.

## A.   Compliance with Treaty Requirements

Bowman first argues that the extradition request does not satisfy the requirements of the Treaty because it does not include the "text of the law." (ECF No. 37 at 3.) He argues that where, as here, the charges are based on common law, the extradition request must set forth the text of the precedent. (*Id.* at 4.) He further argues that the statement of the elements in the extradition request is flawed and inadequate because it is without citation and does not reflect the applicable law at the time of the alleged conduct. (*Id.* at 4–5.) The United States argues in response that the underlying offenses are based on common law in the United Kingdom, not statutory law, and the extradition request includes a signed submission by the Senior Prosecutor for Scotland who "clearly lays out what must be proven to find Bowman guilty of both offenses." (ECF No. 41 at 8–9.)

Scotland has charged Bowman with three counts of lewd, indecent and libidinous practices and behaviour; two counts of rape contrary to the common law; and three counts of breach of the peace. (ECF No. 1 at 9–11, 31–33.) Extradition is not being sought as to

the breach of the peace counts.  (*Id.* at 2 n.2.)  The Request for Extradition, signed and confirmed by Helen H. Knipe, Senior Procurator Fiscal Depute (the "Prosecutor"), explains that:

> Scotland does not have a penal code.  Criminal offences can be offences under the common law or under statute.  Common law is an unwritten law, based on custom and usage and developed by case law of the court.  The development by case law is known as the doctrine of precedent, whereby the decisions of the higher courts are binding on the lower courts.  All the crimes set out in the petition arrest warrant to which this extradition request relates are common law offences.  They are not contained in any statutory provisions, but have all long been recognised and punished by the Criminal Courts in Scotland.

(*Id.* at 17.)

The Prosecutor thereafter addresses the offences under the heading, "Charges and Applicable Law."  (*Id.* at 18.)  With respect to lewd, indecent and libidinous practices and behaviour, the Prosecutor restates that the crime was a common law offense not contained in any statute at the time of the events charged here, although it was later codified in 2009.  (*Id.*)  The nature of the offense is set forth as follows:

> The crime at common law is lewd, indecent or libidinous practices or behaviour towards children (girls or boys) below the age of puberty, with or without their consent.  The age of puberty for girls at common law is 12 years old and for boys at common law it is 14 years old.  The definition of lewd, indecent and libidinous practices and behaviour comes from custom and usage, and the doctrine of precedent.  According to this definition as developed by the courts, the practices may take the form of touching the child or the accused inducing the child to touch the accused in an indecent manner.  Physical contact between the parties is not essential however.  Knowingly to engage in indecent contact in the presence of a child will constitute the crime.  In order to show that the acts amount to criminal conduct, the Prosecutor must prove that an accused person deliberately engaged in conduct tending to corrupt a child's innocence.  An offence of lewd, indecent and libidinous practices and behaviour may also be committed by the taking of indecent photographs of the victim; or by indecent exposure to the victim; or by the showing of indecent photographs or videos to the victim; or by other forms of indecent conduct carried out in the presence of the victim.  It may be committed, by means of a lewd conversation with the victim, whether face to

6

face or by a telephone call or through an internet chat-room.  In each case, the essence of the offence is the tendency of the conduct to corrupt the innocence of the victim.  The intention of the accused person can be inferred from the circumstances of the case.  The ages of the children will require to be proved in court from their evidence and documentary evidence.  Evidence will also be led on the basis of which it can be inferred that the accused would have known the children were well below the age of puberty at the time of the offences . . . .

(*Id.* at 18–19.)  With respect to penalties, the Prosecutor further states, "The maximum penalty that may be imposed following a conviction on indictment for the crime of lewd, indecent and libidinous practices and behaviour as a common law crime is life imprisonment or an unlimited fine or both."  (*Id.* at 19.)

With respect to rape contrary to the common law, the Prosecutor sets forth the nature of the law as follows:

At that time the definition of rape was when a male has sexual intercourse with a female without her consent and where the male knew that the female was not consenting or was reckless as to whether she was consenting.

The essential elements which must be corroborated are: penetration of the victim's vagina by the accused's penis, a lack of consent; and mens rea (intention or the accused's state of mind).  Penetration of the victim's vagina by the accused's penis need only be minimal and the emission of semen is not required.

(*Id.*)  The Prosecutor addresses the manners in which lack of consent can be proved and states, *inter alia*, that:

no girl under the age of 12 has the capacity, in law, to consent to sexual intercourse so lack of consent need not be proved in this case and is established when the age of the victim is proved to be under 12.  It must be shown that the accused knew or should have known the ages of the victims.

(*Id.*)  The Prosecutor also sets forth the law regarding proof of mens rea.

In terms or mens rea, in general terms for the offence of rape the man must know that the woman is not consenting or at least it must be demonstrated that

1
2
3
4

he was subjectively reckless.  An alternative formulation for the requisite mens rea is "an absence of honest belief that the woman was consenting." However, again, a girl under the age of 12 does not have the capacity to consent so lack of consent is established by proof of age and that the accused would have known the ages of the girls.

5
6
7

(*Id.*)  With respect to the penalties for common law rape, the Prosecutor states, "The maximum sentence if convicted on indictment for the rape offences described in charges 2 and 4 is life imprisonment."  (*Id.* at 20.)

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Paragraph 2 of Article 8 of the Treaty states that "[a]ll requests for extradition shall be supported by . . . (c) the relevant text of the law(s) describing the essential elements of the offense for which extradition is requested; [and] (d) the relevant text of the law(s) prescribing punishment for the offense for which extradition is requested[.] . . . "  Treaty, art. 8, ¶ 2.  Bowman argues that Scotland failed to comply with this requirement because the extradition request "fails to provide the text of [the] precedent" in common law.  (ECF No. 37 at 4.)  For authority in support of his position, Bowman points to two cases in which extradition was denied.  (*See id.* at 4–5.)  In *In re Extradition of Molnar*, the court denied extradition because there was insufficient probable cause.  202 F. Supp. 2d 782, 787 (N.D. Ill. 2002).  Although the court noted that it "need not rely" on documentary shortcomings to deny extradition, the court did point out that the extradition packet failed to adequately set forth the elements of the offense because the essential element of knowledge was not included.  *Id.* at 788.  Bowman also cites to *In re Extradition of Ferriolo*, in which the court denied extradition because applicable portions of the criminal statute were omitted from the extradition request and other portions were provided only in English and not in Italian, as required.  126 F. Supp. 3d 1297, 1301 (M.D. Fla. 2015).

24
25
26
27
28

In both of these cases, the extraditee was not adequately put on notice of the nature of the offense because the offense, as set forth in the request for extradition, was materially incomplete—a situation not at issue here.  Bowman cites to no cases, nor could the Court find any, in which courts have interpreted a treaty requirement that the extradition request provide "the text of the law" to mean that a country seeking extradition for a common law

offense must provide "text" from the various cases through which the common law offenses were developed.

Moreover, the Court does not find Bowman's position to be a reasonable reading of the Treaty. "In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements." *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933). Rather, the obligations of treaties "should be liberally construed." *Id.* The "default rule" is that any ambiguity in an extradition treaty should be construed in favor of the rights of the countries that are the parties to the treaties, that is, in favor of facilitating extradition. *Martinez v. United States*, 828 F.3d 451, 463–64 (6th Cir. 2016).

Here, the request for extradition contains the text of the common law crimes in the form of the Prosecutor setting forth in detail the nature of the offenses, the elements of the offenses, the manner in which the elements may be proven, and the penalties for the offenses. Being common law offenses, there simply is no statute from which to pull text. Bowman's suggested requirement that the Prosecutor set forth the text of the caselaw through which the common law offenses were developed would be imminently unworkable and therefore contrary to the intent of the contracting parties.

Bowman further argues that Scotland has failed to comply with the Treaty's "text of the law" requirement because the Prosecutor's explanation of the lewd, indecent and libidinous practices and behaviour offense includes an example that is applicable today but would not have been possible in the 1960s. (ECF No. 37 at 4–5.) Specifically, the Prosecutor, in her explanation that lewd, indecent and libidinous practices and behaviour need not entail physical contact, states, "It may be committed, by means of a lewd conversation with the victim, whether face to face or by a telephone call or through an internet chat-room." (ECF No. 1 at 18.) The salient point in setting forth the nature of the offense is that not only is physical conduct captured, but also "lewd conversations." Bowman presents no authority to suggest that the Prosecutor errs in asserting that the common law offense of lewd, indecent and libidinous practices and behaviour includes,

and at the relevant time included, lewd conversations, even if the Prosecutor does include the modern-day example of communication through internet chat-rooms.

Bowman's reliance on *ex post facto* principles, whether found in the United States Constitution or human rights conventions, is misplaced.  (*See* ECF No. 37 at 4–5.)  *Ex post facto* principles apply to changes that result in: "punish[ing] as a crime an act previously committed, which was innocent when done"; or "mak[ing] more burdensome the punishment for a crime, after its commission"; or "depriv[ing] one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70 (1925)).[3]  These principles are inapplicable here, where Bowman's concern arises from the Prosecutor identifying one possible manner of committing the offense that was literally not possible at the time he is charged to have acted.  This is basically the converse of the situation where *ex post facto* principles apply.

**B.   Probable Cause**

Bowman challenges the sufficiency of the evidence setting forth probable cause that he is guilty of the crimes charged.  (ECF No. 37 at 5–8.)  Bowman points out that the extradition request does not attach declarations by the victims or even the reports of the officers who took their statements.  (*Id.* at 7; ECF No. 42 at 4.)  Instead, the facts are set forth by the Prosecutor without, according to Bowman, explanation as to "how [she] knows of these allegations."  (ECF No. 37 at 7.)  Bowman argues that, although hearsay *can* be used to support probable cause for purposes of extradition, the evidence here is insufficient

---

[3]     Or, in the human rights convention language quoted by Bowman, "No one shall be held guilty of any criminal offence on account of any act or omission which did not constitute a criminal offence under national or international law at the time when it was committed.  Nor shall a heavier penalty be imposed than the one that was applicable at the time the criminal offence was committed."  (ECF No. 37 at 4 (quoting European Convention for the Protection of Human Rights and Fundamental Freedoms, art. 7, Nov. 4 1950, 213 U.N.T.S. 221).)

because the Prosecutor does not *vouch* for the statements in the form of an assertion that the affiant speaks from personal knowledge or a statement of the sources for the affiant's belief and the circumstances from which the affiant concluded that the sources were reliable and credible.  (ECF Nos. 42 at 5–6; 47 at 2.)

The United States, citing, *inter alia*, *Collins v. Loisel*, 259 U.S. 309 (1922), *Manta v. Chertoff*, 518 F.3d 1134 (9th Cir. 2008), and *Matter of Yordanov*, No. CV 16-170-CAS(E), 2017 WL 216693 (C.D. Cal. Jan. 18, 2017), argues that courts have long recognized the sufficiency of hearsay to support probable cause in requests for extradition, and specifically the sufficiency of foreign prosecutors' affidavits with the summaries of witness statements.  (ECF Nos. 41 at 15–16; 48 at 2–3.)

Article 8 of the Treaty addresses Extradition Procedures and Required Documents. As it pertains to the issue raised here, Article 8 requires that all requests for extradition be supported by "a statement of the facts of the offense(s)" and, for requests to the United States, "such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested."[4]   Treaty, art. 8,

---

[4]   The full list of the Extradition Procedures and Required Documents for the extradition of a person who is sought for prosecution is as follows:

- As accurate a description as possible of the person sought, together with any other information that would help to establish identity and probable location;
- A statement of the facts of the offense(s);
- The relevant text of the law(s) describing the essential elements of the offense for which extradition is requested;
- The relevant text of the law(s) prescribing punishment for the offense for which extradition is requested;
- Documents, statements, or other types of information specified in paragraph 3 of Article 8;
- A copy of the warrant or order of arrest issued by a judge or other competent authority;
- A copy of the charging document, if any; and

¶¶ 2(b), 3(c).  There is no requirement that the statement of facts be made under oath or that it be supported by additional documentation made under oath.  Article 9 of the Treaty, the provision addressing authentication, similarly includes no oath requirement:

> The documents that support an extradition request shall be deemed to be authentic and shall be received in evidence in extradition proceedings without further proof if:
>
> . . . they are certified by the principal diplomatic or principal consular officer of the United States resident in the United Kingdom, as provided by the extradition laws of the United States;
>
> . . . they are certified either by the principal diplomatic or principal consular officer of the United States responsible for that territory; or
>
> . . . they are certified or authenticated in any other manner acceptable under the law in the Requested State.

*Id.* art. 9., ¶¶ (b)–(d).

This contrasts with the language of some earlier treaties with other countries, which specifically address the admission in evidence of depositions or other evidence given under oath.  *See, e.g.*, Treaty on Extradition, It.-U.S., art. XI, Jan. 18, 1973, 26 U.S.T. 493 ("The warrant of arrest and deposition or other evidence, given under oath, and the judicial documents establishing the existence of the conviction . . . shall be admitted in evidence in the examination of the request for extradition . . . ."); Extradition Treaty, U.K.-U.S., art. VII, ¶ 5, June 8, 1972, 28 U.S.T. 227 ("The warrant of arrest . . . and any deposition or statement or other evidence given on oath or affirmed . . . shall be received in evidence in any proceedings for extradition . . . ."); Convention Relating to Extradition, Isr.-U.S., art.

---

- For requests to the United States, such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested.

Treaty, art. 8, ¶¶ 2–3.

X, Dec. 10, 1962, 14 U.S.T. 1707 ("The warrant of arrest and depositions or other evidence, given under oath, and the judicial documents establishing the existence of the conviction . . . shall be admitted in evidence in the examination of the request for extradition . . . .").[5]

In setting forth probable cause in the instant extradition request, the Prosecutor describes the circumstances of the victim interviews at paragraph 27:

> A request was sent by officers of the Police Service of Scotland via Interpol to obtain a statement from witness Kato.  A statement was obtained from her on 17 June 2010 by Detective Lieutenant Parra, Universal City Police Department, Texas, US.  Crown Office International Co-operation Unit, Edinburgh, Scotland issued an International Letter of Request to the US authorities for full statements to be obtained from Elizabeth Kato or Bowman, Kathleen Hyland or Bowman, Richard Bowman Junior, Catherine Bowman and Richard Bowman Senior.  Statements from all of these witnesses were taken by a number of US police officers in September and October 2014 *and sent to the Scottish prosecutor*.

(ECF No. 1 at 16 (emphasis added).)   The Prosecutor also states that the victim-witness statements are the source of the evidence in this matter:

> All the evidence in this case comes from the statements provided by the victims describing what happened to them and what they saw happening at the time and, in the case of witnesses Kato and Hyland, and Richard Bowman Senior, admissions the accused has made to them since the offending.

(*Id.* at 22.)  In the section of the request entitled "Statement of the Facts of the Offence," the Prosecutor organizes the charges by victim.  (*See id.* at 11–16.)  Each section sets forth

---

[5]      For this reason, the case upon which Bowman primarily relies, *In re Extradition of Platko* (ECF No. 47 at 5), is inapposite.  *See In re Extradition of Platko*, 213 F. Supp. 2d 1229, 1239 (S.D. Cal. 2002) ("The absence of sworn declarations, not fatal in *Zanazanian* because there was no oath requirement, is a material deficiency in the evidence presented in this case according to the governing Treaty.").  As Bowman readily acknowledges, "in *Platko*, an oath was required under the treaty."  (ECF No. 47 at 5.)  The Court is unpersuaded that dicta in *Platko* provides authority for the proposition that unsworn statements are never sufficient to support probable cause.

the specifics of Bowman's alleged conduct in great detail.  (*See id.*)  Often, the description of the events is specifically attributed to the victim statements such as in the following examples:

- Kato stated to police that "the accused progressed to penetrating witness Kato's vagina with his fingers.  He also began to have sexual intercourse with her.  He would wait until everyone else had gone to bed before getting witness Kato on the floor, penetrating her vagina with his penis and having sexual intercourse with her.  This happened on a regular basis."  (*Id.* at 13.)

- "Witness Kato also described the accused bringing two neighbourhood boys who were around the same age as the accused to the house to have sex with her and her sister, witness Hyland. . . .  She describes instances in which the accused masturbated in her presence."  (*Id.*)

- "Witness Hyland stated that the accused penetrated her vagina with his penis and that this occurred in her bedroom at the house at 7 Rosebank Drive, Viewpark, Uddinston."  (*Id.* at 14.)

- Richard Bowman Junior "states that he can recall boys lying on top of his sisters and that the accused would be in the background watching and masturbating."  (*Id.* at 15.)

Other times, the source attribution is not as explicit, but it is nonetheless clear from the context that the facts come from that witness's statement (e.g., "The offending started with the accused telling witness Kato, who was under 10 years old throughout the offending, to 'suck him' i.e. put his penis in her mouth, which she did.")  (*Id.* at 12.)

The request is signed by the Senior Procurator Fiscal Depute (Prosecutor) beneath the recitation, "I confirm that the circumstances herein described, if proved, entitle a criminal court to convict the said William Bowman of the crimes set out in the petition warrant."  (*Id.* at 26.)

The Court finds Bowman's complaint that the "prosecutor does not even state that she reviewed police reports, statements of witnesses, or *any* evidence" (ECF No. 42 at 4)

14

to be unpersuasive.  The Prosecutor details how the victim statements were obtained and specifically states that they were "sent to the Scottish prosecutor."  (ECF No. 1 at 16.)  In her request for extradition, the Prosecutor sets forth details of the abuse, either explicitly or implicitly attributed to the victims themselves, over the course of 16 paragraphs.  (*Id.* at 12–15, ¶¶ 5–22.)  The descriptions include details setting forth the nature of the abuse, the ages of the victims at the time the abuse occurred, specific locations, things Bowman said and did at the time, and others who were present.  The Prosecutor specifically states that the evidence comes from the statements provided by the witnesses (*id.* at 22) and the totality of the request for extradition leaves no doubt as to the source of the information. [6]

The remaining complaint, then, is that the request is based on hearsay statements by the Prosecutor, and neither sworn statements by the victims or the police reports upon which the Prosecutor relies are included with the extradition packet.  Here, the Court turns to the language of the Treaty.  As stated above, the Treaty mandates that the request for extradition contain "a statement of the facts of the offense(s)," Treaty, art. 8, ¶ 2(b), and, because this is a request directed to the United States, information that "would provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested," *id.* ¶ 3(c).  The Treaty does not require that the request include sworn statements or underlying police reports and it does not require that the request itself be sworn out under penalty of perjury.

Bowman does not dispute that hearsay evidence can support a probable cause determination for extradition purposes, nor does he argue that requirements related to sworn testimony can be found in the language of the Treaty.  Bowman makes a more

---

[6]    For these reasons, Bowman's reliance on *Petition of France for Extradition of Sauvage* ("*Sauvage*"), 819 F. Supp. 896 (S.D. Cal. 1993) is misplaced.  (ECF No. 47 at 4.) In that case, the district court concluded that, to support probable cause, the affiant must speak from personal knowledge or must state "the sources for the affiant's belief and the circumstances from which the affiant concluded the sources were reliable and credible." *Sauvage*, 819 F. Supp. at 902–03.  That has been done here.

nuanced argument that, as a result of the deficiencies identified (no sworn statements attached, no police reports attached, not signed by the Prosecutor under penalty of perjury), this request for extradition does not meet a minimum threshold for what constitutes competent and reliable evidence to support probable cause.  (ECF No. 37 at 7.)

Here, the Court finds that Scotland has established probable cause for purposes of extraditability.  "The extradition judge may consider hearsay evidence, unsigned translations of a witness's statements, unsworn statements of absent witnesses, and summaries by the police or prosecutor of a witness's testimony or statement, provided that those documents are properly authenticated and—as is true in this case—the governing extradition treaty does not require that a witness's statements be executed under oath."  *In re Extradition of Luna–Ruiz*, No. CV 13-5059 VAP AJW, 2014 WL 1089134, at *4 (C.D. Cal. Mar. 19, 2014), *aff'd sub nom. Luna–Ruiz v. Barr*, 753 F. App'x 472 (9th Cir. 2019). As addressed above, the request meets all the requirements as to form and content set forth in the language of the Treaty.  And despite the fact that the Prosecutor did not submit the request under penalty of perjury, the proffered evidence has sufficient indicia of reliability to satisfy the Court.  The proffered factual allegations are detailed, come from the victims themselves, and address all the elements of the offenses.  The statements were taken by police officers in the United States at the request of Scottish authorities after Elizabeth Kato reported the abuse to law enforcement officials in the United States and then in Scotland. (ECF No. 1 at 16.)  Probable cause has been adequately established.

## C.   <u>Dual Criminality</u>

The Treaty requires "dual criminality," that is, Article 2 of the Treaty requires that a defendant can only be extradited for an offense "if the conduct on which the offense is based is punishable under the laws in both States by deprivation of liberty for a period of one year or more or by a more severe penalty."  Treaty, art. 2, ¶ 1.  Bowman argues that "the conduct alleged occurred while Mr. Bowman was a juvenile, between the ages of 13 and 18" so the conduct would not be characterized as "criminal" under the laws of the United States.  (ECF No. 37 at 9.)

The United States first responds that the charged conduct (rape and lewd, indecent and libidinous practices and behaviour) could be punished under federal or California statutes, punishable by a term of imprisonment of more than one year.  (ECF No. 41 at 7, 9–10.)[7]  As to Bowman's specific argument that there cannot be dual criminality because Bowman was under 18 when the alleged acts were committed, the United States first points out that Bowman was over 18, and therefore an adult, at the time of the commission of multiple acts of sexual assault.  (*Id.* at 10.)  Second, the United States argues that a defendant who committed the offenses Bowman is alleged to have committed as a juvenile could be charged as an adult in the United States.  (*Id.* at 10–11.)  Finally, the United States argues the Court should defer to the State Department opinion that the offenses for which the extradition of Mr. Bowman is sought are covered by the Treaty.  (*Id.*)

According to victim Elizabeth Kato, the abuse began when Bowman joined the family in 1963 during a time the family was living first on Old Edinburgh Road and then on Rosebank, both in Uddingston, Scotland.  (ECF No. 1 at 12.)  The abuse occurred "on a regular basis" while the family lived in Scotland from July 1963 into 1968.  (*Id.* at 12–

---

[7]  Bowman does not challenge the United States' analysis on this point or argue that the Scottish offenses are not substantially equivalent to California or federal offenses.  The Court finds the United States' position on substantial equivalence to be persuasive.  (ECF No. 41 at 10–11.)

With respect to the charged offense of lewd, indecent and libidinous practices and behaviour as set forth in charge 5, relating to victim Richard Bowman Jr. (based upon allegations that Bowman masturbated in front of the victim while others sexually assaulted the female victims), the United States argues that this offense is not "an extraditable offense standing on its own" because it is not analogous to a felony under California Law, but is instead the equivalent of California Penal Code § 314, a misdemeanor.  (*Id.*)  The United States argues, however, that Article 2, paragraph 5 of the Treaty (erroneously referenced by the United States as Article 4.5 of the Treaty) specifically provides that if extradition is granted for an extraditable offense, it may also be granted for offenses that are punishable by less than one year of confinement so long as all other requirements for extradition are met.  (*Id.*)  Bowman does not respond to this or otherwise offer any argument to the contrary.  The Court finds this analysis to be sound.

13.)  According to Elizabeth Kato, the abuse of the younger sister, Kathleen Hyland, also happened "on a regular basis."  (*Id.* at 13.)  "The abuse happened nearly daily throughout the period libeled in the charge [13 July 1963 and 29 February 1968]."  (*Id.*)  In 1968, the family moved to the United States, but Bowman did not immediately join them.  (*Id.* at 12–13.)  "The abuse stopped for a brief time as the accused did not go with the family to the US immediately in 1968 but joined them later after his adoption was finalised," and the abuse resumed when Bowman moved to the United States in 1968 or 1969.  (*Id.* at 13.)

According to Bowman's California Department of Motor Vehicles records, his date of birth is October 6, 1949.[8]  (*Id.* at 27.)  This means he turned 18 on October 6, 1967, before the Bowman family moved to the United States in 1968.  The victim reports that the abuse occurred "on a regular basis" and "nearly daily" between July 13, 1963, and February 29, 1968, before it was interrupted temporarily by the family's move to the United States. Therefore, there is probable cause to believe that some of the criminal conduct occurred while Bowman was an adult.  For this reason, Bowman's challenge to extradition based upon his dual criminality argument fails.

Even if Bowman had been a juvenile for all of the charged criminal conduct, the Court would not be persuaded that this would defeat dual criminality.  The Court returns, again, to the language of the Treaty.  Article 2, paragraph 1 states, "An offense shall be an extraditable offense if the conduct on which the offense is based is punishable under the laws in both States by deprivation of liberty for a period of one year or more or by a more severe penalty."  Treaty, art. 2, ¶ 1.  Bowman does not argue, nor could he successfully, that a juvenile charged in the United States with this conduct could not receive a year or

---

[8]  According to the request for extradition, Bowman's date of birth is "10.06.1949" (ECF No. 1 at 10) which, in light of European conventions for setting forth dates, could be understood to mean June 10, 1949.  If this is intended to indicate a June birthdate, the discrepancy might be attributable to a misinterpretation based upon different conventions of setting forth dates (month/day/year versus day/month/year).

19mj5089-JLB

1   more in custody, even if he were not charged as an adult.  *See United States v. Juvenile*,

2   347 F.3d 778, 784 (9th Cir. 2003) ("The maximum term of 'official detention' to which a

3   juvenile may be sentenced is the lesser of the period until the juvenile turns twenty-one

4   years old or the maximum that could be imposed under the United States Sentencing

5   Guidelines." (citing 18 U.S.C. § 5037(c))).

6          Rather, Bowman argues that dual criminality is not met because, in the United States,

7   federal juvenile delinquency proceedings are "*in fact* civil proceedings."  (ECF No. 37 at

8   9.)  But Bowman cites to no authority that stands for the proposition, or even suggests, that

9   conduct committed by a juvenile, which constitutes criminal activity under state and federal

10   law, could not be extraditable because the proceedings under which that juvenile would be

11   prosecuted in the United States are deemed to be civil proceedings.  The designation

12   applied to the proceedings would seem to be irrelevant, as the language of the Treaty

13   addresses not the nature of the proceedings, but the underlying offense: an offense

14   "punishable under the laws in both States by deprivation of liberty for a period of one year

15   or more."  Treaty, art. 2, ¶ 1.  In fact, the Ninth Circuit opinion language Bowman himself

16   quotes (ECF No. 37 at 9) undermines his position: "[T]he primary purpose of the FJDA

17   remains to rehabilitate children who have committed *criminal acts*."  *Juvenile*, 347 F.3d at

18   787 (emphasis added).[9]  As this language underscores, juvenile delinquency proceedings

19   are pursued based upon the violation of criminal statutes and upon conduct constituting

20   "criminal acts."

21          The dual criminality requirement is satisfied.

22   **D.     Fifth and Sixth Amendment Violations**

23          Finally, Bowman argues that he should not be extradited because the delay in

24   prosecution has been too great and violates his Fifth and Sixth Amendment rights.  (ECF

25

26

27   [9]     Erroneously cited by Bowman and attributed to *United States v. Male Juvenile*, 280

28   F.3d 1008, 1023 (9th Cir. 2002).  (ECF No. 37 at 9.)

19

No. 37 at 9–14.)   Bowman sets forth extensive Fifth and Sixth Amendment analysis in support of this claim, but cites no authority for his ultimate argument that in the context of an extradition request to the United States, "these principles require that a person accused of foreign charges receive timely notice that he is sought for extradition and an effective opportunity to challenge the proof upon which the extradition request is based" (*id.* at 9) or that "[t]he Fifth and Sixth Amendment is [sic] applicable to these proceedings because the Treaty . . . permits extradition only where the offense is 'punishable under the laws of the both States'" (*id.* at 13).

The United States counters that "U.S. Constitutional concepts applicable in criminal cases are not applicable in international extraditions, which are not criminal cases." (ECF No. 41 at 12.)   Incorporating the extraditing country's constitutional provisions into the Treaty's provisions "would be in tension with the rule of non-inquiry in international extradition cases" and would be "inconsistent with the intent of the parties, who did not incorporate U.S. constitutional principles into the Treaty." (*Id.* at 12–13.)   The United States points out that the cases cited by Bowman (*United States v. Fernandes*, 618 F. Supp. 2d 62 (D.C. 2009), and *United States v. Mendoza*, 530 F.3d 758 (9th Cir. 2008)), involve defendants facing prosecution in the United States, who, for that reason, are "entitled to the full panoply of rights enumerated in the United States Constitution." (*Id.* at 13.) Finally, the United States argues that any delay in filing an extradition request should be considered by the Secretary of State at the final determination stage. (*Id.*)

As addressed above, the magistrate judge's role in an extradition hearing is very limited.

> [A] magistrate or judge first holds a hearing to determine "whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge." The magistrate judge "has no discretionary decision to make."   Rather, "[i]f the evidence is sufficient to sustain the charge, the inquiring magistrate judge is required to certify the individual as extraditable to the Secretary of State and to issue a warrant."   The Secretary of State then determines in her discretion whether the individual will be surrendered.

1    *Prasoprat*, 421 F.3d at 1012 (footnote omitted) (citations omitted) (first quoting *Cornejo–*

2    *Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir. 2000); then quoting *Lopez–Smith*, 121

3    F.3d at 1326; and then quoting *Blaxland* 323 F.3d at 1208)).  "The Secretary exercises

4    broad discretion and may properly consider myriad factors affecting both the individual

5    defendant as well as foreign relations which an extradition magistrate may not." *Martin v.*

6    *Warden*, 993 F.2d 824, 829 (11th Cir. 1993).

7         Because extradition proceedings are not criminal in nature, the Fifth and Sixth

8    Amendment speedy trial protections, which by their terms are only available in criminal

9    cases, are unavailable in extradition cases.  *See id.* at 830 ("Recognizing a right to a speedy

10    extradition would simply be an oblique method of forcing treaty partners to adhere to the

11    speedy trial guarantee contained in the United States Constitution.  No circuit court has

12    recognized such a right."); *see also Kamrin v. United States*, 725 F.2d 1225, 1227–28 (9th

13    Cir. 1984) (noting that "due process rights cannot be extended extraterritorially" and that

14    any delay in seeking extradition "may not . . . serve as a defense to judicial extradition

15    proceedings") (citing *Neely v. Henkel*, 180 U.S. 109, 122 (1901))); *Rommy v. Swain*, No.

16    CV 17-1615 JVS (RAO), 2018 WL 4006955, at *4 (C.D. Cal. July 12, 2018) ("Petitioner

17    argues that his Fifth and Sixth Amendment rights have been violated because he has not

18    yet been extradited, but there are no such constitutional guarantees in extradition cases of

19    this nature.").  The Ninth Circuit has recognized that issues going to improper delay must

20    be left for the Secretary of State's consideration and may not serve as a defense to judicial

21    extradition proceedings.  *See Man–Seok Choe v. Torres*, 525 F.3d 733, 741–42 (9th Cir.

22    2008) ("To the extent there was a delay [in the request for extradition], this is a matter left

23    for the Secretary of State's consideration."); *Kamrin*, 725 F.2d at 1227 ("When the United

24    States is the requested country, delay in seeking extradition may be relevant to the

25    Secretary of State's final determination as to whether extradition may go forward.  The

26    delay may not, however, serve as a defense to judicial extradition proceedings." (citations

27    omitted)).

28

19mj5089-JLB

To support his position, Bowman argues that the extradition requirement of dual criminality (allowing for extradition only for offenses "punishable under the laws of both States") incorporates all constitutional protections of the contracting states into the extradition treaty. (ECF No. 37 at 13 ("Thus, the two countries have specifically contracted to apply the laws of both countries . . . [and] [t]he word 'constitution' is unambiguously defined as a type of law." (citing *Constitution*, *Black's Law Dictionary* (7th ed. 1999).) Bowman cites to no cases, nor could the Court find any, where a court has construed this very common requirement of dual criminality to fold, wholesale, all the procedural and constitutional protections of the contracting states into the extradition treaty. Such an interpretation flies in the face of the myriad authority cited above that, at least at the level of judicial extradition proceedings, extraditees cannot assert U.S. constitutional criminal protections to avoid extradition from the United States. Therefore, the Court finds Bowman's opposition to extradition on Fifth and Sixth Amendment grounds to be without merit.

## IV.   FINDINGS AND CERTIFICATION

The Court makes the following findings: (1) There is a valid extradition treaty between the United States and the United Kingdom of Great Britain and Northern Ireland; (2) Bowman has been charged in Scotland, a country of Great Britain, with three counts of lewd, indecent and libidinous practices and behaviour, two counts of rape, and three counts of breach of the peace; (3) Scotland seeks extradition of Bowman on the charges of rape and lewd, indecent and libidinous practices and behaviour, but not on the charges of breach of the peace; (4) rape and lewd, indecent and libidinous practices and behaviour constitute extraditable offenses within the meaning of the extradition treaty between the United States and the United Kingdom; and (5) there is probable cause to believe that William Mitchell Bowman, the fugitive and the same person who is before this Court, committed the offenses for which his extradition is sought. The required documents have been presented in accordance with the laws of the United States and the Treaty and have been properly authenticated.

1   Based on the foregoing findings, the Court concludes that William Mitchell Bowman
2   is extraditable for the offenses for which extradition is requested, specifically rape and
3   lewd, indecent and libidinous practices and behaviour.  This matter is certified to the
4   Secretary of State, together with a copy of the exhibits and all argument before the Court
5   in order that a warrant may issue upon the request of the proper authorities of Scotland for
6   the surrender of Bowman, according to the provisions of the treaty between the United
7   States and the United Kingdom of Great Britain and Northern Ireland.

8   It is ordered that William Mitchell Bowman is committed to the custody of the
9   United States Marshal, or his authorized representative, pending final disposition of this
10  matter by the Secretary of State and surrender to Scotland.  Defendant has until noon on
11  Friday, November 20, 2020 to self-surrender to the United States Marshal's Service.

12  **IT IS SO ORDERED.**

13  Dated:  November 12, 2020

_Jill Burkhardt_
Hon. Jill L. Burkhardt
United States Magistrate Judge